IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TORIE PLY                                                                            PLAINTIFF

v.                                Civil No. 12-3088

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                       DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Torie Ply, brings this action under 42 U.S.C. § 405(g), seeking judicial review

of a decision of the Commissioner of Social Security Administration (Commissioner) denying

his claim for supplemental security income ("SSI") pursuant to Title XVI of the Social Security

Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review,

the court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed his application for SSI on October 6, 2009, alleging an onset date of

January 1, 2008, due to the residuals of a broken neck and anxiety attacks.  Tr. 19, 62-63, 143,

177, 180, 188, 192.   The Commissioner denied Plaintiff's application initially and on

reconsideration.  Tr. 62-63, 67-70, 74-76.  An administrative hearing was held on January 14,

2011.  Tr. 25-49, 77-79.  Plaintiff was present and represented by counsel.

At the time of the hearing, Plaintiff was 32 years old and possessed an eleventh  grade

education.  Tr. 18, 29-30.  He had no past relevant work "(PRW")  experience.  Tr. 18, 161-168.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

On February 14, 2011, the ALJ found Plaintiff's osteoarthritis/degenerative joint disease of his cervical spine and anxiety were severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  Tr. 11-14.  After partially discrediting Plaintiff's subjective complaints, the ALJ determined that he retained the residual functional capacity ("RFC") to

> perform sedentary and light work as defined in 20 CFR 416.967(a)(b).  The undersigned further finds that the claimant is limited to unskilled work and is limited to working alone or with a small team.

Tr. 14.  With the assistance of a vocational expert, the ALJ then concluded that Plaintiff could perform work as a fast food worker, maid/housekeeper, packer/hand packager, and courier/outside delivery.  Tr. 19.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on May 30, 2012.  Tr. 1-5.  Subsequently, Plaintiff filed this action.  ECF No. 1.  This case is before the undersigned for report and recommendation.  Both parties have filed appeal briefs, and the case is now ready for decision.   ECF Nos. 7, 8.

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

## II.   __Applicable Law__:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)-(f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

III.   **Discussion:**

      Plaintiff raises several issues on appeal.  His contentions are as follows: 1) the ALJ erred in his RFC determination; 2) the ALJ failed to consider his impairments in combination; 3) the ALJ overly penalized him for his failure to consistently pursue medial treatment when he did not have the financial means to do so; and, 4) the ALJ failed to propound an accurate hypothetical question to the vocational expert.  After reviewing the evidence of record, we disagree.

    A.   **RFC Determination:**

      RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals

4

for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

### 1.    Physical Impairments:

In the present case, we note that Plaintiff was involved in an automobile accident in December 2002, resulting in a fracture to his cervical spine at the C5 level and a laceration to his forehead. Tr. 428-445. He underwent anterior cervical fusion with plate fixation and allograft at the C5-6 level on March 17, 2003, and the evidence indicates that he healed without incident. Tr. 439-442. In April 2003, his physician advised him that he could discontinue use of the neck collar. There are no further medical records to document his neck pain until August 11, 2009, at which time he presented at North Central Arkansas Medical Associates with complaints of neck pain and anxiety. Tr. 347-349. An examination revealed no abnormalities with a normal range of motion in his neck, a normal mood, and an appropriate affect. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Plaintiff was prescribed Darvocet, Flexeril, and Zoloft. On September 11, 2009, Plaintiff returned for a follow-up of his symptoms. Tr. 350-352. He stated that he had not begun taking the Zoloft because he had taken it in the past with side effects. Plaintiff also reported that he had experienced better results with Tramadol than he was experiencing with Darvocet. And,

5

once again, his neck examination was normal.  The doctor discontinued the Darvocet and Zoloft and prescribed Lexapro and Ultram.

The record reveals no further treatment for neck pain, although he did seek out medical attention on numerous occasions for dental pain. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment).   Physical exams conducted in conjunction with his dental pain revealed no neck pain or tenderness and no range of motion limitations.  Tr. 242-263, 264-280, 355-373.

In 2010, non-examining consultative examiners, Drs. Bill Payne and Patricia McCarron completed physical RFC assessments.  Tr. 321-32, 388.  They concluded that Plaintiff could perform medium level work, i.e., he could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk with normal breaks for about 6 hours in an 8-hour workday; and sit with normal breaks for about 6 hours in an 8-hour workday.  Tr. 321-27, 388. See 20 C.F.R. § 416.967 (defining medium work).  They did not find any postural, manipulative, visual, communicative, or environmental limitations.  Tr. 322-24, 388.

## 2.   Mental Impairments:

Plaintiff has also complained of limitations resulting from social anxiety and panic attacks.  In August and September 2009, Plaintiff sought treatment for his anxiety.  Tr .347-349, 350-352.  On September 9, 2009, Plaintiff underwent am adult diagnostic assessment at Health Resources of Arkansas.  Tr. 296-300.  He reported that his anxiety attacks had increased significantly over the last 6-7 months, resulting in self isolation.  Plaintiff also stated that he was

currently taking only Flexeril and Darvocet.  The clinician diagnosed Plaintiff with generalized anxiety disorder rule out post traumatic stress disorder ("PTSD").

Emergency room treatment notes for dental related symptoms suggest that Plaintiff's anxiety may have been somewhat situational.  On September 11, 2009, he was noted to have an anxious mood with an appropriate affect.   However, by September 15, 2009, his mood was calm and relaxed.  Tr. 222-228.

On December 14, 2009, Dr. Charles Nichols conducted a mental status evaluation of Plaintiff at the agency' request. Tr. 302-307.  He reported that Plaintiff was engaged, made good eye contact, had a euthymic affect, and seemed to minimize his functioning initially, only to later admit that he functioned better than first described.  Tr. 304.  He had understandable speech; did not present with any signs of thought disturbance; and, denied a history of delusional thoughts, suicidal or homicidal ideation, or bizarre obsessions.  Tr. 304.  Plaintiff also indicated that he was not currently taking any psychiatric medications.  Dr. Nichols found him to be alert and fully oriented with a normal fund of information and an above average pace.  Tr. 305.  However, his immediate auditory recall results were suggestive of intentional symptom exaggeration.  Dr. Charles Nichols diagnosed him with generalized social phobia with panic attacks and alcohol dependence in sustained full remission, and assigned him a global assessment of functioning ("GAF") score of 55-60.  Tr. 306.

In identifying the impact of the diagnosed conditions, Dr. Nichols noted a moderate impairment of Plaintiff's activities of daily functioning mostly in group settings, but found no qualitative impairments in his social skills.  Tr. 306-307.  He found Plaintiff's cognitive abilities to be  difficult to assess due to a strong suspicion of intentional under-performance, but found

no indication of any significant cognitive deficits that would impact his work ability.  Further,

he had adequate concentration for most cognitive tasks, did not display signs of psychomotor

slowing that could be expected to interfere with job-like tasks, and displayed adequate processing

speed to complete tasks in a timely manner.  However, his mental effort seemed questionable

likely "due to an attempt to feign cognitive deficits."  Tr. 306.  Dr. Nichols concluded that

although Plaintiff's symptoms could be attributed to a panic disorder with agoraphobia, fear of

failure and embarrassment appeared to be the triggers for his symptoms, and hence, social phobia

was the most appropriate diagnosis.  Tr. 306.  He noted that while Plaintiff's history and

description were consistent with panic attacks, he suspected malingering and "signs of symptom

exaggeration" and "inflation of his anxiety symptoms."  Tr. 306-307.

On February 16, 2010, Dr. Shannon Brownfield performed a consultative physical

examination of Plaintiff at the request of the state agency.  Tr. 312-17.  Plaintiff reported a

history of a fractured neck with resulting chronic neck pain and frequent panic attacks.  Dr.

Brownfield observed some limitation in extension and rotation in the cervical spine, but the

examination was otherwise essentially normal.  Tr. 314-16.  No evidence of muscle spasm; joint

deformities or instabilities,  muscle weakness or atrophy, or sensory or neurological limitations

was noted.  Plaintiff had a normal gait and station, normal limb function; normal pulses; no

edema, and a negative straight leg raise test.  Dr. Brownfield also found Plaintiff to be fully

oriented with only mild anxiety.  After reviewing the radiographic evidence, he diagnosed

Plaintiff with panic disorder, untreated, and cervicalgia status post cervical fracture and surgery.

He opined that Plaintiff had globally moderate to severe limitations due to his panic disorder and

moderate limitations in his neck use.  However, it is to be noted that Plaintiff reported taking no medications at this time.  Tr. 316.

Treatment for a dental abscess in April 13, 2010, again revealed an appropriate mood and affect.  Tr. 355-373.

On November 1, 2010, Plaintiff underwent a neuropsychological evaluation with Dr. Vann Smith.   Tr. 395-403.   Dr. Smith diagnosed Plaintiff with cognitive dysfunction, non-psychotic, secondary to general medical conditions, i.e., hypertension; traumatic brain injury (TBI) with grade II/III concussion; degenerative disc disease (cervical) with C4-5 fusion; chronic, non-psychogenic, poorly controlled, pain disorder; and rule out complex partial seizure variant. Tr. 395-98.  He also completed a mental RFC questionnaire, in which he found Plaintiff unable to meet competitive standards in several of the abilities and aptitudes necessary for semi-skilled and unskilled work.  Tr. 399-403.  Further, Dr. Smith anticipated that Plaintiff would be absent from work more than four days a month given his impairments and/or treatment.  Tr. 402. However, he also concluded that Plaintiff's judgment and insight were intact, his narratives logical and informative, documented no evidence of an associational anomaly, and concluded that Plaintiff was oriented in all spheres.  Additionally, IQ testing revealed a full scale IQ of 88, which is not reflective of cognitive dysfunction.   And, it appears Dr. Smith's restrictions extrapolated more from Plaintiff's subjective complaints than from any objective findings.  Tr. 320-45.

In 2010, non-examining consultative psychologists, Drs. Kevin Santulli and Kay Cogbill, assessed Plaintiff's mental RFC.  Tr. 328-345, 389.  They opined that he was able to perform work where the interpersonal contact was incidental to work performed; the complexity of tasks

was learned and performed by rote, few variables, and little judgement; and the supervision required was simple, direct, and concrete.  Tr. 344, 389.  Specifically, the doctors concluded Plaintiff had moderate limitations with regard to carrying out detailed instructions, maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behaving, adhering to basic standards of neatness and cleanliness, responding appropriately to changes in the work setting, traveling in unfamiliar places or use public transportation, and setting realistic goals or make plans independently of others.

Further, Plaintiff's activities of daily living reveal that he could care for his children on a daily basis; lift his baby onto the bed and change his diapers; prepare simple meals; do laundry; mow the yard; go out alone, shop in stores for food, diapers, clothing, and baby food twice per week; spend time with his fiancé and children; and, get along with authority figures. Tr. 38, 152-159, 302-307.  He also reported the ability to stand/walk four hours per day and sit for 8 hours per day.  Tr. 197-218.  Clearly, these activities do not support a finding of total disability.

After reviewing the record,  we find substantial evidence to support the ALJ's conclusion that Plaintiff could perform unskilled sedentary and light work that involves only working alone or working with a small team.  As recited above, the medical evidence does not reveal consistent treatment for either his neck pain or his social phobia/anxiety.  And, the treatment notes of record reveal only slight limitations associated with his alleged impairments.  Additionally, it  does not

10

appear that Plaintiff was consistently taking pain medication or anti-anxiety medications, as would be expected in the case of an individual suffering from severe pain, anxiety, and panic attacks. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).

Dr. Brownfield concluded Plaintiff would have moderate limitations with regard to his neck use, which we find to be adequately accounted for in the ALJ's RFC. Likewise, Dr. Brownfield's determination that Plaintiff suffered from moderate to severe anxiety is also taken into account by the ALJ's finding that he should either work alone or in small groups. Dr. Nichols noted that Plaintiff's mental evaluation was fraught with malingering and signs of symptom exaggeration, revealing no credible evidence of cognitive limitations.[2] And, the record makes clear that his mental symptoms stem from his fear of failure and/or embarrassment, which can be adequately controlled by limiting the number of people he works with on a daily basis.

**B.     Considering Impairments in Combination:**

Next, Plaintiff alleges that the ALJ failed to consider Plaintiff's impairments in combination. It is true that the ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan,* 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.,* 872 F.2d 810, 812 (8th Cir. 1989)). In the present case, the ALJ was obligated to consider the combined effect of Plaintiff's

---

[2]We note Dr. Smith's opinion, but have also discredited it due to inconsistencies and lack of overall support in the record. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in case record; physician's own inconsistency may diminish or eliminate weight accorded to his opinion).

physical and mental impairments.  *Id.* at 484 (citing *Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984) and *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979)).  And, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

After reviewing the record, the undersigned is convinced that the ALJ properly evaluated all of Plaintiff's impairments in combination.  *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) (where ALJ found that claimant did not have impairment or combination equaling listing-level impairment and referred to evidence as a whole, ALJ properly considered combined effect of impairments).  He discussed all of the medical evidence of record, including Plaintiff's unsupported subjective complaints prior to determining Plaintiff could perform a range of light and sedentary work.

**C.**    **Financial Hardship:**

Plaintiff also contends that the ALJ improperly penalized him for failing to obtain consistent medical treatment for his impairments.  He believes his behavior is justified because he was unable to afford more consistent care.  We disagree.  A lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for his alleged pain and disability, as in the present case, is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992).  Likewise, the absence of evidence to indicate that Plaintiff was ever turned down for treatment due to his inability to pay for services weighs against his claim.  And, we note that the Plaintiff was able to obtain treatment for dental pain in the emergency room on numerous occasions, indicating that he could have sought out emergency

12

treatment for his complaints.  He could have also foregone smoking in an effort to better afford treatment and medication, but failed to do so.  *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999).  Therefore, we do not find that Plaintiff's failure to obtain consistent treatment for his complaints is excused by his alleged financial hardship.

> **D.      Vocational Expert:**

Lastly, Plaintiff asserts that the ALJ failed to propound an accurate hypothetical question to the vocational expert.  Again, we disagree.  "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).  The ALJ's hypothetical question included all of Plaintiff's limitations found to exist by the ALJ and set forth in the ALJ's description of Plaintiff's RFC.  *Id*.  Based on our previous conclusion, that the ALJ's RFC determination is supported by substantial evidence, we hold that the hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.  *Id*.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

13

DATED this 2nd day of October 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

14